IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEER CREEK WATER CORPORATION, ) <br> ) <br>     Plaintiff/counterclaim defendant,   ) <br> ) <br> v.                                                ) <br> ) <br> CITY OF OKLAHOMA CITY and     ) <br> OKLAHOMA CITY WATER          ) <br>   UTILITIES TRUST,               ) <br> ) <br>     Defendants/counterclaimants,    ) <br> ) <br> THOMAS WAYNE BOLING and    ) <br> GINA BETH BOLING,             ) <br> ) <br>     Intervenor-plaintiffs,         ) <br> ) <br> v.                                                ) <br> ) <br> DEER CREEK WATER CORPORATION, ) <br> ) <br>     Defendant.                       ) | Case No. CIV-19-1116-SLP |

# **O R D E R**

Before the Court is the Motion for Preliminary Injunction [Doc. No. 76] filed by Intervenors Thomas Wayne Boling and Gina Beth Boling. It is at issue. *See* Resp., Doc. No. 89. The Court held an evidentiary hearing on September 1 and 3, 2020, at which multiple individuals testified and additional evidence (beyond that submitted with the parties' briefs) was admitted. *See* Minute Sheet of Proceedings, Doc. No. 138; Minute Sheet of Proceedings, Doc. No. 139. The Bolings request that the Court issue an order directing Oklahoma City to provide all water services to their property for the remainder of this lawsuit, which will allow the Bolings to tell prospective lot purchasers that water

currently is available on the property (pending connection of individual lots, as needed and if not already done, to an Oklahoma City water main). If no injunction is issued, the agreement reached by the parties in January 2020 (described *supra*) will remain in effect and water will be available for construction purposes on the property, but not for eventual consumptive use until the right to provide such consumptive use is determined through the resolution of this lawsuit.

## I.     Background

This case is a dispute regarding whether Plaintiff Deer Creek Water Corporation has a protected right under 7 U.S.C. § 1926(b) to provide water to the Bolings' property. If Deer Creek does not have such a right, water will be provided by Defendants City of Oklahoma City and Oklahoma City Water Utilities Trust (together, "Oklahoma City"). Section 1926(b)—a part of the Consolidated Farm and Rural Development Act of 1961, as amended—was "enacted . . . as part of a federal statutory scheme to extend loans and grants to certain associations providing water service to farmers, ranchers, and other rural residents. Section 1926(b) prohibits other water utilities from encroaching upon services provided by federally indebted water associations." *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 (10th Cir. 2012). "[T]o receive the protection against competition provided by § 1926(b) a water association must (1) have a continuing indebtedness to the [USDA] and (2) have provided or made available service to the disputed area. The purpose of the second inquiry is to determine whether the disputed customers are within the water association's service area, i.e., that area to which [the association] provided service or made service available." *Sequoyah Cty. Rural Water Dist.*

*No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1197 (10th Cir. 1999) (quotation marks and citation omitted). In conducting the second § 1926(b) inquiry, the Court is to "focus primarily on whether the water association has *in fact* made service available, i.e., on whether the association has proximate and adequate pipes in the ground with which it has served or can serve the disputed customers within a reasonable time." *Id.* at 1203 (quotation marks omitted). "[A] water association meets the pipes-in-the-ground test by demonstrating that it has adequate facilities within or adjacent to the area to provide service to the area within a reasonable time after a request for service is made. This is essentially an inquiry into whether a water association has the capacity to provide water service to a given customer."[1] *Id.* (quotation marks and citation omitted).

Previously, Deer Creek sought a temporary restraining order (which the Court denied) and a preliminary injunction. *See* Mot., Doc. No. 3. The Court conducted a partial hearing on that injunction request, before the parties (including the Bolings) reached a mid-hearing agreement—that "[Oklahoma] City would provide water to test and chlorinate the water lines being built within the development and then only to charge the lines for fire suppression, which is a requirement for construction" (Mot. 4, Doc. No. 76) and that "Deer Creek [would] provide all other construction water" (Hr'g Tr. 87:6-7, Doc. No. 76-5)—under which Deer Creek withdrew its injunction request. *See* Minute Sheet of Proceedings,

---

[1] Also included within the second inquiry is whether the water association "ha[s] a legal right, under state law, to provide service to the customer[s at issue]." *Sequoyah Cty. Rural Water Dist.*, 191 F.3d at 1201 n.8; *see also id.* (comparing the legal right to provide services with the legal duty to do so). The legal right of Deer Creek to provide service has not been put at issue in the context of the Bolings' injunction request.

Doc. No. 36. The Court thereafter held a status/scheduling conference, issued a scheduling order, and subsequently extended the deadlines therein based on the agreement of all parties for the same. Currently, summary judgment motions have been filed by Deer Creek, Oklahoma City, and the Bolings, with responses thereto filed as well. The summary judgment motions will be at issue within a few days. In addition, Deer Creek and Oklahoma City have filed *Daubert* motions, which are awaiting response and reply briefs.

## II.  Preliminary injunction standard

The standard requirements for a preliminary injunction are well established:

> Ordinarily, a movant seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest. Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal.
> 
> For certain preliminary injunctions, the movant has a heightened burden of showing that the traditional four factors weigh heavily and compellingly in its favor before obtaining a preliminary injunction. The heightened burden applies to preliminary injunctions that (1) disturb the status quo, (2) are mandatory rather than prohibitory, or (3) provide the movant substantially all the relief it could feasibly attain after a full trial on the merits. This court disfavors such injunctions.

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154-55 (10th Cir. 2001) (citations omitted).[2] The Tenth Circuit defines the "status quo" as "the last

---

[2] "[T]he burdens at the preliminary injunction stage track the burdens at trial" as to the merits of the controversy—i.e., the first factor for a preliminary injunction. *Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). But the burdens on the remaining factors and to clear the heightened bar which is applicable here remains with the Bolings. *See Paher v. Cegavske*, No. 3:20-cv-243-MMD-WGC, 2020 WL 2748301, at *3 (D. Nev. May 27, 2020).

uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Id.* at 1155 (quotation marks and citation omitted). "In determining the status quo for preliminary injunctions, th[e] court looks to the reality of the existing status and relationship between the parties and not solely to the parties' legal rights." *Id.*

In this case, the Bolings are seeking an injunction which requires a heightened showing. While the Bolings make a policy-based argument for why the heightened-showing requirement should not apply, they do not provide any legal authority by which the Court can ignore the applicable precedent on this issue and create an exception to when the above-indicated types of injunctions require a heightened burden be met. *See* Mot. 6, Doc. No. 76. While Oklahoma City might be amenable to providing water to the property at issue, Oklahoma City has likewise made clear that it will not do so without a court order. Thus, the Bolings are asking the Court to order a party to act in a way that the party otherwise would not act. That is, the injunction sought by the Bolings remains mandatory, not prohibitory, in its nature, and the heightened burden applies.

In addition, the Court agrees with Deer Creek that the status quo would be disturbed by the Court granting the injunction sought by the Bolings. This is true regardless of when the baseline status quo is measured: (i) via almost fifty years of Deer Creek having provided water service to the property at issue (albeit for a single residence and for purposes requiring much less water than the business development and residential development now undertaken by the Bolings) or (ii) via the agreement reached in January 2020 by the parties to this lawsuit through which Oklahoma City is providing water for certain activities to the property, but not for broader purposes or permanently, and Deer Creek is providing water

for any other construction activities of the Bolings.  The Bolings argue that the status quo should instead be measured from approximately November 2019, when they were proceeding forward with the development and under the understanding (though a potentially incorrect one depending on the final outcome of this case) that Oklahoma City could and would provide water for the construction of and eventual operation of the commercial and residential portions of their development.  However, that "status" already represented a change from the years prior when the property was provided water by Deer Creek.  And such a status—as demonstrated by the existence of this lawsuit and the fervor with which it has been tried by all parties—was not "uncontested."  *Dominion Video Satellite*, 269 F.3d at 1155 (quotation marks and citation omitted).  Accordingly, the Court finds that the issuance of the injunction sought by the Bolings would be a change in the status quo, and the heightened burden applies.

**III.   Analysis and discussion**

The Bolings' asserted basis for their injunction request is to "avert their financial ruin."  Mot. 1, Doc. No. 76.  They contend that they are unable to close sales of any lots to potential buyers without the ability to "honestly advis[e them] that water service is presently []available," and that this inability to make sales "seriously threaten[s] both the viability of the development and the Bolings' financial lives."  *Id.* at 5.  However, Deer Creek presented substantial evidence at the hearing in this matter that the Bolings' financial problems predated this lawsuit.  They were required to borrow money from their bank both to purchase some of the land at issue and again to cover general expenses prior to this lawsuit.  They experienced significant delays in the development of the land at issue

because of problems encountered with engineers that they hired (and subsequently cut ties with) and because of their lack of knowledge regarding environmental laws and regulations—which led to them filling in, then re-digging out, two retention ponds on the property.  The Bolings had a substantial net loss in earnings for 2019, also before their involvement in this lawsuit began.  And while they have tried to sell lots on the property, those efforts were unsuccessful before this lawsuit began (and during the period that they believed that Oklahoma City would provide water service to the property without controversy), but they have enjoyed at least some success since their initiation of involvement in this lawsuit and since the January 2020 agreement between the parties was reached, having sold two commercial lots.  Much of the Bolings' troubled current financial status was caused not by the delay in determining the provider of water for the property at issue, but instead in their inability to sell other properties they own (which also have been listed for sale) because of the recent downturn in oil prices and in the economy overall, which—while not wholly predictable—are not uncommon occurrences and are not occurrences which affect the Bolings exceptionally or differently from other farmers, ranchers, developers, and business owners.  Such generalized economic circumstances do not support the issuance of an injunction; otherwise, federal courts would distribute injunctions left and right during times of economic hardship and would withhold all such injunctions for business owners in times of economic boom.  And the Court finds that the Bolings have not shown that irreparable harm caused by Deer Creek will result from the denial of the Bolings' injunction request.

To be sure, there is some evidence to the contrary. Most notably, at least one residential home builder testified that his company is ready and willing to begin purchasing lots and building homes on the to-be-residential portion of the property once the issue of which entity will provide water service is determined and there is a firmer understanding of when such service will be available. But he also testified (as did Mr. Boling and the Bolings' banker) that which entity—Deer Creek or Oklahoma City—ultimately provides water service for the development is irrelevant to him. The important point as to sales of residential lots is that *somebody* can provide water. And that gets to the heart of the issue herein. This is not a case where the Court's decision on the injunction request or the Court's eventual ruling in this case will settle a water-or-no-water question. (Were that the case, the outcome of the instant motion might well be different.) Rather, there are two entities which both want to provide water to the Bolings' property. There is no reason for the Court to believe that there will not be water available to the Bolings' property by the time that buildings are completed and commercial owners/tenants or individual residents are ready to twist the taps so they can wash their hands, serve their clients, or water their lawns. The only question is from which entity such water will come from by the time that day arrives. And that day is not yet here; no new buildings have been completed (or even started) on the property in either its commercial or residential areas. Immediate access to consumptive water is not needed now.

Deer Creek also presented evidence that the Bolings' financial position is not as absolute or as dire as it might otherwise seem. While the Court does not doubt that the Bolings currently are unable to meet their loan interest obligations without taking

additional actions, Deer Creek pointed out that the Bolings own multiple assets which appraise to (or the Bolings estimate the value of at) a higher amount than the money owed thereon. The Bolings explained that the overall sum of those assets cannot be sold because they are used in the Bolings' farming, cattle, and excavation businesses. But no explanation was given as to why individual assets which are not as vital for daily use cannot be sold, with the income therefrom used to pay any amount borrowed against the asset and the remainder used to service the loan interest at issue herein. Such a decision might be painful, but the Court cannot say it is inappropriate in a situation like this one. And the Bolings' representation of this matter as an injunction-or-inevitable-default choice is not actually that simple.

Finally, the Court notes the unique procedural posture of this case as compared to when most injunctions are sought. Summary judgment orders are nearly at issue and, if this case is not resolved on summary judgment, trial will follow soon thereafter. The Tenth Circuit has indicated that "[i]f a trial on the merits can be conducted before the injury would occur there is no need for interlocutory relief." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). That advisement is not wholly applicable in this case, but it is somewhat so. Because lines have been run from individual commercial lots (albeit ones on which no buildings are yet constructed) to the Oklahoma City water main, awaiting the Court's final determination in this case which should arrive within the next one to three months may cause some delay to the Bolings' progress on the development (though, again, there does not seem to be any question in this case that *water will be available* because

9

regardless of the outcome of this case, there is an entity standing ready to provide it). This is not a case that will be allowed to linger before this Court for an extended period of time.

But there is otherwise no ability on the part of the Bolings to currently obtain water—specifically for the residential portion of the development. No lines have been run connecting individual lots to either the Deer Creek or Oklahoma City water main, and it is not clear that a final plat for the residential portion of the development has been approved. So, any additional delay between issuance of this order and final resolution of this case will not impact their continued construction progress on the residential portion of the development, and no applicable injury will occur prior to the expected timeline for resolution of this matter.

Because the Court finds that the Bolings have not met their heightened burden with regard to the second factor for a preliminary injunction and the relief requested by the Bolings would alter the existing (and previously existing) status quo, the Court need not reach the Bolings' likelihood of success on the merits or the other preliminary injunction factors. That said, nothing herein prevents the parties from operating under the agreement they reached in January 2020 by which the Bolings have access to Oklahoma-City-provided water for fire suppression services and to Deer-Creek-provided water for any construction needs. Planning for and erection of buildings can continue/begin on the property immediately absent any other impediment not at issue in this lawsuit. There is water on the property now for certain activities, and there will be water available to the property (either from Deer Creek or Oklahoma City) for consumptive use when this matter is resolved in relatively short order. Finally, this order does not prevent the Bolings from

reaching an agreement with Deer Creek for Deer Creek to compassionately allow the Bolings to receive water from Oklahoma City to the degree they request in their motion without prejudice to any party's position in this lawsuit. The Court, who will be the ultimate factfinder and decider in this case (either via summary judgment or a bench trial), is fully able to separate actions taken by the parties during litigation which were agreed to be made without prejudice to their legal positions from the relevant and determinative facts and issues in this case. Thus, no party need worry that actions taken while this matter is pending will be considered by the ultimate factfinder in an inappropriate manner via accident or confusion.

## IV.    Conclusion

The Court does not discount the troubling financial position that the Bolings are in. And the Court does not decide herein anything as to the merits of this case and whether § 1926(b) provides protection for Deer Creek as to the provision of water to the Bolings' property. The Bolings and Oklahoma City may eventually prevail in this suit, or Deer Creek might do so. That issue will be resolved based on the parties' summary judgment briefs or via trial—either of which the Court intends to reach in as quickly a manner as possible. The only issue reached herein is the one before the Court—whether the necessary requirements for a preliminary injunction under the heightened standard have been met based on the law and whether irreparable injury to the Bolings caused by Deer Creek will occur if a preliminary injunction is not issued immediately.

IT IS THEREFORE ORDERED that the Bolings' Motion for Preliminary Injunction [Doc. No. 76] is DENIED for the reasons stated herein.

IT IS SO ORDERED this 4th day of September, 2020.

*[signature]*

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE